In re ELECTROFORMEX LABORATO-
RIES, INC., Debtor.

ELECTROFORMEX LABORATORIES,
INC., Plaintiff,

v.

INDUSTRIAL FACTORY RENTALS
REALTY TRUST, Defendant.

Bankruptcy No. 8600491.

Adv. No. 860065.

United States Bankruptcy Court,
D. Rhode Island.

Aug. 7, 1987.

John P. McGann, Coffey, McGovern,
Noel & Neal, Ltd., Providence, R.I., for
debtor.

Joseph A. Capineri, Capineri & Crowley,
Ltd., Pawtucket, R.I., for Industrial Facto-
ry Rentals.

## DECISION ON DEBTOR'S MOTION FOR DETERMINATION OF PRE–PETITION LEASE DEFAULTS AND ON DAMAGES

ARTHUR N. VOTOLATO, Jr., Bankrupt-
cy Judge.

Heard on June 2, 1987, on the debtor's
request for a determination of the amount
it owes for pre-petition electric charges un-
der its lease with Industrial Factory Rent-
als (IFR), and for damages resulting from
IFR's decision to turn off the power to the
premises occupied by the debtor.

This Chapter 11 case was filed on July
16, 1986, and on Janury 7, 1987, we granted
the debtor's motion to assume its pre-peti-
tion lease with IFR. At that time debtor
indicated that it was ready to cure its de-
fault for pre-petition lease payments. The
monthly lease payments include the cost of
electricity, which is passed on to the debtor
after IFR is billed by Blackstone Valley
Electric Company (BVE). Cure of lease
defaults, or adequate assurance of prompt
cure, is required by 11 U.S.C. § 365 if the
debtor is to assume an unexpired lease.
Debtor now contends that the amount IFR
says is required to cure defaults for elec-
tric bills, $13,339, is excessive, and argues
that a reasonable charge for the electricity
it used is $8,781.20.

Debtor presented testimony by Rob-
ert Winter, a supervisor with BVE, who
qualified as an expert witness. According
to Winter, IFR prepared bills for its ten-
ants by taking its total electric bill for the
entire site, breaking out the amount of

kilowatt hours used by each tenant, and multiplying that number by the kilowatt hour rate charged by BVE. This formula produced a dollar amount for electricity which was added to each tenant's rent to determine the monthly lease payment. The individual meters which measure the amount of electricity used by each tenant are owned by IFR and not by the utility company. Mr. Winter testified that these meters are old (forty years plus), and inaccurate. However, he could not say whom the meter errors favored, and conceded that it is possible that the meter measuring use by the debtor could have erred on either side of the ledger, and that due to the age of the meters, there was no way to determine in which direction the error could go. Winter also testified at length about the discrepancy between the amount of electricity coming in from BVE, and the total (smaller) number of kilowatt hours IFR is billing the debtor and IFR's other tenants. Mr. Winter's suspicion was that there was another, undisclosed tenant on IFR's site consuming electricity. Although that may be a logical deduction, any such conclusion is irrelevant here, because the witness conceded that IFR is not including the cost of the missing electricity in the debtor's monthly bills.

Debtor contends that Mr. Winter's testimony provides the basis for determining that a reasonable charge for pre-petition electricity is $8781.20, instead of $13,339. Winter testified that he multiplied the electrical consumption per machine by the number of production hours. Debtor supplied the number of production hours per machine on which Winter based his calculation. However, debtor has failed to demonstrate that the same conditions existed when Winter measured electrical usage as existed pre-petition. For example: Mr. Winter testified that he did not measure the electrical consumption of each machine, nor did he meter the electricity consumed by a compressor which the debtor currently uses. At an earlier hearing held on September 25 and 26, 1986, Harold Flynn, president of the debtor, testified that the debtor achieved substantial savings in its electric consumption after replacing, post-petition, the compressor originally rented from IFR, with a smaller, more efficient compressor. The debtor also sold three machines post-petition, *see* Order of November 19, 1986, but it is unclear whether these machines were in use pre-petition, or if they were idle. Based upon all the evidence, we find that the debtor has failed to prove that IFR has overcharged it for pre-petition electricity, and that $13,339 is due under the lease.

■ Debtor also seeks $10,330 in damages for alleged loss of revenue caused by IFR's shut-off of electric power from July 11 through July 24, 1986.[1] The damages were calculated by Harold Flynn, president of the debtor, who totaled the number of machine hours lost daily, multiplied by the amount of revenue ($30/hour) generated by each machine. *See* Debtor's Exhibit 3. However, no records were presented to show that the debtor was producing the amount of revenue which it claims was lost. The absence of such records is significant. Moreover, debtor's reports to the United States Trustee for the period July 17 through July 31, 1986, show total receipts of $7,734.63, and a net loss of $6,730.17. The loss does not include rent and utility payments which were unpaid during July. Based on the debtor's net operating loss during July 1986, and the absence of any records to support the debtor's calculation of damages, Electroformex's damage claim is speculative at best, and is denied.

---

1. On July 18, 1986, we granted the debtor's request for a temporary restraining order, which required IFR to restore utility service to the debtor.